HELEN W. KELLEY & another *vs.* JOSHUA C. KELLEY & another.

Suffolk.    May 22, 1930. — September 23, 1930.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Equity Pleading and Practice,* Master: report; Appeal. *Partnership. Release. Accord and Satisfaction. Good Will. Contract,* Construction, Partnership agreement.

The plaintiff in a suit in equity, having filed an appeal from a final decree therein and having paid to the clerk the estimated expense of the appeal, instructed the clerk to defer preparation of the papers and the printing in reliance on an agreement by the defendant's counsel that, if nothing further were done to prosecute the appeal until the return of the plaintiff's counsel from a journey, the defendant would not assert that such delay was a ground for dismissal of the appeal. Upon return of counsel, he had a conference with the defendant's counsel, who made a certain offer in consideration of the plaintiff's waiving the appeal. Counsel for the plaintiff agreed to communicate the offer to the plaintiff. Nothing was agreed upon at that conference relative to proceeding with the printing. Counsel for the defendant understood that, although counsel for the plaintiff should have an opportunity to discuss the defendant's offer with the plaintiff, an immediate answer was to be given. Counsel for the plaintiff understood that he should have time for conference with the plaintiff and examination of the matters discussed. Counsel for the plaintiff, because of further absence and of the plaintiff's illness, was unable to communicate the defendant's offer to the plaintiff for about seven weeks. Immediately after communicating with the plaintiff he instructed the clerk to proceed with the printing. A few days later the defendant filed a motion to dismiss the appeal for failure to prosecute it seasonably. The motion was denied, the judge who heard it finding that the delay was justifiable. *Held,* that
    (1) The defendant, by reason of the agreement of his counsel, could not complain of the delay pending the return of the plaintiff's counsel from his journey;
    (2) In the circumstances, the finding by the judge with regard to the delay after the conference between the parties' counsel was warranted, even if it was not required;
    (3) There was no error in the denial of the motion.
Under a partnership agreement in writing between a man and his three sons, each partner had a "capital account" with the firm. At no time was the good will of the business included as an asset thereof for the

purpose of determining the value of the partners' shares.  The agreement provided that, upon the death of any partner, the survivors should become the owners of the entire business and should continue it for their own benefit; and that they should pay to the deceased partner's estate a certain sum with respect to his "capital account" within five years after his death, and should pay to his widow a certain percentage of the profits for a specified period of years.  Upon the death of the father, his sons orally agreed to carry on the business as it had been conducted previously under the original agreement of partnership.  A few years later one of the sons died.  About eighteen months later, upon the request of the deceased son's widow, the surviving sons paid to her as executrix of her husband's will a sum of money, for which she gave them a "receipt," not under seal, whereby she acknowledged receipt of "the amount in full standing to the credit of" her husband's "capital account" and released the surviving sons and the partnership of all claims and demands against them, except with respect to profits earned by the business.  She subsequently brought a suit in equity against the surviving sons charging them with having acted fraudulently toward her, and seeking to have the "receipt" cancelled and to have the defendants ordered to pay her certain further sums with respect to her husband's "capital account" and to have the company's good will included as an asset in fixing the value thereof.  It was found by a master to whom the suit was referred that the "receipt" was obtained by the defendants without deceit.  *Held*, that

(1) The conduct of the three sons was material in determining the terms of the oral agreement among them under which the partnership was carried on between the time of their father's death and the time of the plaintiff's husband's death; and there was no error in a finding by the master that the three sons' action was in accord with their understanding of the original agreement in writing;

(2) In view of the charges of fraud in the bill, it was proper for the master to make findings with regard to the plaintiff's experience in business and to her investments;

(3) In view of those charges, it was proper for the master to make findings respecting the defendants' belief that there were no assets other than those credited in settling with the plaintiff and that good will was not an asset to be included for that purpose;

(4) The master properly included in his report a statement with regard to certain evidence which was essential to an understanding by the court of an offer of proof made by the defendants;

(5) The "receipt" given by the plaintiff to the defendants constituted a release of all claims against the defendants except those relating to profits;

(6) The anticipation by the defendants of the time when the payment made to the plaintiff was due was consideration for the "receipt";

(7) The payment constituted an accord and satisfaction barring the plaintiff's claim to further payments with regard to her husband's "capital account";

(8) The original partnership agreement showed an intent of the four partners that the death of one should not put an end to the business with a sale of the good will, but should leave the others to go on subject to the making of the payments by the survivors to the deceased's estate and to his widow in lieu of any share in a sale of good will;

(9) Under the original partnership agreement and the oral agreement of the three sons, the plaintiff had no right to a sale of the good will and to a share in the proceeds.

BILL IN EQUITY against Joshua C. Kelley and Herbert W. Kelley, filed in the Superior Court on February 4, 1926, to have cancelled the "receipt" given by the plaintiff to the defendants and described in the opinion, and for an accounting concerning the affairs of Union Paste Company.

The plaintiff was the widow and executrix of the will of Chester B. Kelley. She sought an order that the defendants pay to her twenty-eight and one third per cent "of the total value of said Union Paste Company as a going concern. And that for the purpose of fixing this value this court shall determine the valuation of the good will, earning power, the trade names, formulas and secret processes and all other assets owned by Union Paste Company"; that the defendants pay to the plaintiff twenty-eight and one third per cent of all profits earned by the company from April 17, 1920, to the date of the filing of the bill; and that the defendants pay to the plaintiff the balance of ten per cent of the net profits of the company due her to January 1, 1926, and to continue to pay said ten per cent until final determination of the suit.

The suit was referred to a master, who found the making of the agreements of partnership between Anthony Kelley and his sons as stated in the opinion; that the last agreement was made on December 31, 1912, between Anthony Kelley and Herbert W. Kelley, Joshua C. Kelley, the defendants, and Chester B. Kelley; that the business of Union Paste Company was conducted under the agreement of December 31, 1912, until the death of Anthony Kelley in 1917; that his three sons thereupon orally agreed to continue the business of the partnership "as it had theretofore been conducted and under the terms of the written agreement of December 31, 1912; that the business was thereafter conducted in

accordance with that agreement down to the death of Chester B. Kelley" on April 17, 1920; and that, under the several agreements, "Two accounts were kept for each of the partners, — one called a Personal Account, and the other called the Capital Account. On the Personal Account there was credited any moneys paid in or advanced to the business and the share of the partner in the profits of the business for the current year; there were charged to the partner on his Personal Account, any withdrawals of money made by him during that year. At the end of each year, the Personal Accounts were balanced and the balances were carried to the Capital Account of each partner; that is, if the amount credited to a partner on his Personal Account exceeded the amounts charged against him on account of his withdrawals, the balance was credited to him on his Capital Account. If the withdrawals exceeded the credits on the Personal Account, the difference was charged against the partner on his Capital Account. . . . Apart from good will and any excess of actual value of machinery and equipment over its book value as hereinafter found, the books and accounts accurately reflected the affairs of the partnership. . . . Throughout the life of the partnership and under the several agreements of 1905, 1908 and 1912, and down to the death of Anthony Kelley on January 11, 1917, in the annual statements of account of the partnership, the assets taken into account were stock in trade, material, machinery, furniture and fixtures and other physical assets taken at an inventory value agreed to by the several partners, bills, notes and accounts receivable and cash. At no time was any good will of the business entered on the books or treated as an asset thereof for the purpose of determining the respective shares of the partners under the several partnership agreements above reported or for any purpose." The master further found that certain provisions of the agreement of December 31, 1912, were substantially as follows: "Upon the death of any partner an account between the surviving partners and the estate of the deceased partner shall be stated and thereupon the surviving partners shall take the whole of the business and net assets and become the owners thereof and

entitled to continue the business in their own behalf and for their own benefit, the surviving partners being entitled to said assets, business and profits from the continuance of said business in . . . [certain] proportions, [that of Chester B. Kelley being twenty-eight and one third per cent in the event of the death of Anthony Kelley]. On or before the expiration of five years from the death of a partner the survivors should pay to the representative of the deceased partner such proportion of the balance of the capital, profits and assets remaining after the payment of liabilities as the deceased partner would have been entitled to if said partnership had been terminated by notice and said survivors shall pay within five years to the representative of the deceased partner all amounts which should appear from the books to be due from the partnership to the deceased partner at the time of his death and in the meantime should pay five per cent interest on the amounts remaining due from time to time. In addition the surviving partners should pay to the widow of the deceased partner each year for ten years, if she lives that long and remains unmarried, certain portions of the net profits, [that of the widow of Chester B. Kelley to be ten per cent]."

Other material facts, and findings and rulings by *Gray*, J., are stated in the opinion. By order of the judge, there were entered an interlocutory decree confirming the master's report, and a final decree (1) directing the defendants to pay the plaintiff $819.35, with interest from December 31, 1925, the amount due and unpaid on account of ten per cent of the profits of the business to that date; (2) directing the defendants to pay the plaintiff said ten per cent to April 17, 1930, or until her death or remarriage occurring before then; (3) "That the plaintiff is not entitled to any accounting by the defendants for the good will of the Union Paste Company or any balance of capital, profits or assets as of the date of her husband's death, April 17, 1920."

All parties appealed from both decrees. Proceedings with reference to the defendants' motion to dismiss the plaintiff's appeal are described in the opinion. The defendants appealed from an order by *Bishop*, J., denying that motion.

*W. B. Grant,* (*L. L. G. de Rochemont* with him,) for the plaintiffs.

*J. W. Worthen,* (*E. B. Cook* with him,) for the defendants.

WAIT, J.   Two appeals are before us.   The plaintiff's appeal cannot be considered if the defendants' appeal is well taken.   The Superior Court on October 23, 1929, entered an interlocutory decree which overruled exceptions of both plaintiff and defendants to a master's report and confirmed the report;   and a final decree which directed payment to the plaintiff in a certain amount and established her right to a further payment.

The findings of the judge establish the following facts: On November 9, 1929, the plaintiff claimed appeals, and on the same day gave order to the clerk to prepare the papers for transmission to this court.   Thereafter the clerk estimated the expense and notified the plaintiff.   On November 29, 1929, counsel for the plaintiff paid the estimated amount to the clerk.   On December 3, 1929, counsel for the defendants learned of the appeal and communicated with one of opposing counsel by telephone and by letter agreeing that "if no further action is taken . . . in prosecution of your appeal between now and three or four days after . . . [one of the plaintiff's counsel's] return from Texas, we shall not assert that such a delay is ground for dismissal of the appeal."   The plaintiff's counsel on the same day notified the clerk to defer the preparation and printing until further notice from him.   Telephone inquiries on December 12 and 23 disclosed that absent counsel had not then returned; but on December 31, the defendants' counsel were informed that he had returned on December 28.   Conference was had on January 2, 1930, at which the defendants refused to increase the payment provided for in the decree as ordered; but offered, if the appeal were dropped, to anticipate payment of the further amount to which the plaintiff's right was established.   Counsel agreed to communicate this offer to their client.   On January 4, 1930, counsel for the plaintiff wrote counsel for the defendants asking for figures, and concluding: "As soon as I receive this, . . . I will have a final conference with Mrs. Kelley and will immedi-

ately let you know the result."₀ The figures were received on January 10, 1930, but before the receipt one of the plaintiff's counsel again left Boston. He returned in the middle of January, but was unable to communicate with the plaintiff who was then ill in bed. Not until late in February were counsel successful in communicating with her. Then on February 27 or 28, order was given to go on with the printing for the appeal. At the conference of January 2 no definite agreement was made about proceeding with the printing. Counsel for the defendants understood honestly that, although opportunity to discuss with the plaintiff was to be had, an immediate answer was to be given. Counsel for the plaintiff understood that they should have time for conference with the client and examination of the matters discussed. On March 4, 1930, the defendants filed a motion to dismiss the appeals for failure to comply with the requirements of law, in neglecting to enter the appeals in this court and to proceed without delay in the preparation therefor. The judge found that counsel for the plaintiff acted in good faith, that the facts justified the delay; and denied the motion. We find no error. The delay, unexplained, would have required dismissal. See cases collected in *Gordon* v. *Willits*, 263 Mass. 516, 520. No complaint, however, is, or can be, made by the party promoting it for such delay as existed before January 2, 1930; and the facts found with regard to delay thereafter justify, if they do not require, the decision of the trial judge. *Gordon* v. *Willits, supra. Griffin* v. *Griffin*, 222 Mass. 218.

We turn to consideration of the plaintiff's appeals. There is no merit in the contention that there was error in overruling the objections to the master's report. Inasmuch as the conduct of the partners was material in determining the terms of the oral agreement of partnership under which the business was carried on between the death of Anthony Kelley, which put an end to the written agreement as a full statement of the terms of partnership relation, and the death of Chester B. Kelley, the plaintiff's testator, the finding that their action was in accord with

their understanding of the written agreement was proper. Sufficient is stated in the documents set out in the report to furnish evidence from which the court could make a finding, if necessary.

In view of the bill's charges of fraud, the findings with regard to the plaintiff's experience in business and investments were competent. *Farrell* v. *Chandler, Gardner & Williams, Inc.* 252 Mass. 341. For the same reason this is true also of the findings respecting the belief of the defendants that there were no assets other than as credited; and of the defendants and Chester B. Kelley, that good will, if any, was not an asset, and that the agreed payment to be made to widows stood in lieu of any right to distribution of assets including good will. The other portion of the report with regard to the evidence offered through the witnesses Storer and Joshua C. Kelley is essential to an understanding of the offer of proof. There was no error in its insertion in the report.

The plaintiff contends that the judge erred in his finding and ruling that a release executed by the plaintiff in October, 1921, barred a claim to a percentage of the difference between the actual and the book value of machinery and equipment valued as of a certain date; and that no recovery could be had, in this case, for good will. The master's report shows that under date of October 1, 1921, the plaintiff accepted from the defendants a sum which they stated and believed to be the full amount coming to her as Chester B. Kelley's capital account in the firm. By the agreement of partnership this amount was not absolutely payable until the expiration of five years from Chester's death, that is, until April, 1925. She desired at the moment to purchase certain real estate, and proposed that an advance be then made of all that would come to her. The defendants agreed, made payment, and took from her a paper not under seal, called by all parties a "receipt," which recited receipt from the defendants of $5,931.58, "the amount in full standing to the credit of my late husband's .... capital account," and set out "in consideration of said payment . . . I, in my individual

capacity and as Executrix . . . do hereby release and forever discharge the . . . [defendants] co-partners as aforesaid and the Union Paste Company [the firm] from any and all claims and demands of any name and nature I may have against them. But this release is not intended in any way to affect the distribution of profits as set forth in the original partnership papers . . . dated December 21st, A.D. 1912." There was no discussion between them of any settlement, or release, or of any other consideration than the one mentioned in the paper. This paper speaks for itself, and, in terms, releases all claims except the claim for profit distribution. That exception demonstrates the intent of the parties to include all other claims within the scope of the release. The plaintiff retained a copy without examination until, dispute arising, apparently, in regard to the profits, she consulted a lawyer in November of 1925. There was no deceit in obtaining it. The defendants anticipated payment by nearly four years. Although they had a right to compel receipt of the amount due within five years from April, 1920, they could not be obliged to make payment within the period. Payment at the time it was made was consideration for a release. There was accord and satisfaction. There was no error in holding that it bound the plaintiff. *Brooks* v. *White*, 2 Met. 283.

We need not discuss the law applicable to the right of a deceased partner's estate to share in the good will of the partnership in the absence of provision in the partnership agreement. See *Hutchinson* v. *Nay*, 187 Mass. 262, 263. There was here a definite provision. We are aided in interpreting it by the conduct of the partners upon the death of Anthony Kelley. The evidence discloses three written agreements of partnership between Anthony Kelley with first one, then two, and finally three, of his sons in the business created by him and continued with his children. Examination and comparison of these agreements demonstrate that the father and sons contemplated a business to be continued in the family, where the death of one should not put an end to the business with a sale of the

good will, but should leave the others to go on subject to payment by the survivors to the deceased's estate of such loans to capital uses as he had made up to the time of his death with interest during the period of five years within which payment was to be made, and to further payment to the widow of a percentage of future profits, in lieu of any share in a sale of good will. The last written agreement terminated when Anthony Kelley died. Thereafter the sons went on upon an oral agreement embodying the terms of the last written agreement as they understood them. No sale of good will was made, but after the father's death the sons paid to his widow each year the agreed percentage of the profit.

We are satisfied that by the proper interpretation of the partnership agreement the plaintiff had no right to a sale of the good will and a share in the proceeds. She is not entitled to more than the decree awards to her.

The order for final decree was right. Entries should be made

*Upon the defendants' appeal, order denying*
*motion to dismiss affirmed.*

*Upon the plaintiff's appeals, decrees affirmed.*